IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT
AT GREENEVILLE

LUE ELLA ROGERS,                     )
                                     )
        Plaintiff,                   )
                                     )    No. 2:04-CV-434
v.                                   )    (GREER/GUYTON)
                                     )
TENNESSEE BOARD OF REGENTS, et al.,  )
                                     )
        Defendants.                  )

**REPORT AND RECOMMENDATION**

This matter is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by Order [Doc. 40] of the Honorable Ronnie Greer, United States District Judge, for a report and recommendation on the defendants' Motion For Summary Judgment [Doc. 31]. The Court conducted a hearing on the said motion on November 21, 2006.

**I.      Introduction**

This is an action, based on alleged violations of substantive and procedural due process rights, brought by the plaintiff Lue Ella Rogers ("Rogers") against the Tennessee Board of Regents and others, arising from the dismissal of Rogers from the nursing school program at Walter State Community College ("WSCC").

Specifically, Rogers asserts that she had a valuable property right to pursue her education in nursing and to have the provisions of the WSCC Nursing Handbook properly applied to her. She also claims that her dismissal amounted to defamation by a government employee, and, therefore, that she has an action under 42 U.S.C. §1983. Finally, Rogers asserts a claim of

procedural due process violations, alleging that WSCC's actions in this case were arbitrary and capricious.

The defendants, on the other hand, assert that the plaintiff can not establish either a substantive or procedural due process claim. According to the defendants, Rogers had no protected interest in receiving a passing grade, and after she received a failing grade, she was properly dismissed from the nursing program. The defendants also assert that WSCC properly reviewed her appeal of that grade. Finally, defendants argue that the plaintiff has no defamation cause of action against them as a matter of law.

In August, 2005, the Court dismissed all monetary claims of the plaintiff against WSCC, the Tennessee Board of Regents, and their respective employees and members in their official capacities. [Doc. 17]. As a result, plaintiff's claim for equitable relief, that is, injunctive relief under 42 U.S.C. § 1983, is the sole remaining claim in this case. [Doc. 35]. Specifically, plaintiff seeks to enjoin WSCC from dismissing her from the nursing program [Doc. 10], thereby, in effect, requiring WSCC to readmit her as a nursing student.

After carefully considering the entire record, and the arguments of counsel made during the November 21, 2006 hearing on this motion, the Court concludes that summary judgment in favor of the defendants is proper. Accordingly, for the reasons set forth herein, it is **RECOMMENDED** that the defendants' Motion For Summary Judgment [Doc. 31] be **GRANTED**.

**II.    Relevant Facts**

As required by Rule 56 of the Federal Rules of Civil Procedure, the Court will recite and consider the relevant facts in the light most favorable to the plaintiff. In doing so, the Court

relies on the deposition of the plaintiff, deposition testimony of witnesses, other exhibits filed with the Court, and the stipulations of fact made by counsel during the November 21, 2006 hearing.

The plaintiff enrolled in the two-year nursing program at WSCC in the fall of 2001. The nursing curriculum at WSCC included both classroom instruction and clinical training at various area hospitals. In the fall of 2003, plaintiff was assigned to Clinical Instructor Ramona Logan ("Logan") and to Johnson City Medical Center for this clinical training. The clinical course was designated "Nursing 2511" and was the introductory clinical course. The plaintiff requested that she be transferred to Laughlin Hospital in Greeneville, because her daughter, who was also a nursing student at WSCC, was assigned there, and they would be able to carpool. Although other students were allowed to transfer, the plaintiff was not. [Rogers Inter. Ans. No. 8].

The clinical rotation at Johnson City Medical Center was scheduled to begin on September 10, 2003, and to conclude after thirteen sessions on November 26, 2003, with a make-up session on December 10, 2003. [Logan Exhibit No. 1; Rogers Dep. at 24]. On each clinical date, the plaintiff was assigned a patient to attend under the supervision of a practicing nurse, or "preceptor," and was supposed to have been supervised and instructed on-site by Logan. Logan, however, was only present with the plaintiff for a few minutes each day. [Rogers Dep. at 50]. Logan did not maintain contemporaneous records of all of her observations and critiques of the plaintiff, although there were some recorded observations. [Logan Dep. at 19-21]. There also were written evaluations prepared by Logan. [Rogers Dep., Ex. 3].

The clinical labs were scheduled to run from 6:30 a.m. to 4:30 p.m. each day. [Logan Dep., Ex. 1]. Logan, however, shortened each session by an hour to take into account her personal child-care needs. The plaintiff objected to this in speaking with Cheryl McCall ("McCall"), Director

3

of Nursing. McCall reported to Logan that the plaintiff had made an objection about her. [Rogers Inter. Ans. No. 8; McCall Dep. at 21][1].

An essential component of the clinical evaluation program at WSCC was the evaluation of nursing students by their clinical instructor. The program required each student to demonstrate competence in a number of different clinical behaviors. One of the instructor's duties was to advise a student as to her progress so that an opportunity was provided for a student to learn and improve over the course of the semester to avoid an unsatisfactory final evaluation.

The "Nursing Handbook" [Logan Dep., Ex. 10 and Logan Dep., Ex. 11] set out behaviors or skills to be learned by the student. It also provided an evaluation instrument for the instructor to use in assessing the student's performance. Logan was under a duty to apply these standards [Logan Dep. at 39-41; Rucker Dep. at 17, lines 2-11]. The handbook also contained a set of guidelines to be used by the instructor in filling out the student's evaluation. The evaluation program required Logan to give a "preliminary evaluation" at an early point in the course so as to allow a student an opportunity to make improvements. Finally, at the end of a semester, a student was to be given a final evaluation that would be a basis of the course grade. If a student did not receive seventy-five percent "satisfactory" marks on the final evaluation, then the student would be given a failing grade in the course.

In order to provide the student with notice of any deficiencies and to provide the

---

[1] In her brief and at oral argument, the plaintiff claimed that the next time the plaintiff saw Logan, Logan said to her, "you've gotten me in trouble." In short, the plaintiff paints Logan as someone who viewed the plaintiff negatively and as something of a whistle blower, and therefore, Logan failed her due to ill will or bad motive. The plaintiff, however, provides no citation to the record to support these claims. Logan's only testimony was that, in her opinion, the plaintiff "would rebel against constructive criticism." [Logan Dep. at 19].

student with an opportunity to improve, the Nursing Handbook stated that on any clinical day in which a student was performing at an "unsatisfactory" level, the student would be notified on that day and that "all unsatisfactory performances would be documented on a student communication form" [(See Appendix F). - Nursing Handbook, pg. 33, ¶ F2.] Further, the clinical evaluation policy provided that:

> A student in danger of a clinically unsatisfactory evaluation will be notified by the instructor so that performance can be improved to a satisfactory level by the end of the semester.

[Nursing Handbook, pg. 33, ¶ F3.]

The plaintiff was not given advance notice of any deficiencies that would lead to an unsatisfactory or "needs improvement" mark on her final evaluation. [Rogers Inter. Ans. No. 8; Rogers Dep. at 24]. No student communication forms were ever filled out, communicated to the plaintiff, or provided to the Director of Nursing as required by the Nursing Handbook. [Logan Dep. at 54-56; McCall Dep. at 20-21]. Logan, in her deposition testimony, was unable to give any specific instances or dates where she may have informed the plaintiff of the possibility of clinically unsatisfactory performance. [Logan Dep. at 47].

The parties disagree as to when Logan may have given the plaintiff her "preliminary evaluation." Logan states that this was done on November 10, 2003. [Logan Dep. at 45]. The plaintiff states that it was done on November 19, 2003. [Rogers Dep. at 36; 39][2].

There is also a dispute in the testimony as to what document represented the true

---

[2] The plaintiff's argument is that when Logan gave her the preliminary evaluation on November 19th, there was only one clinical day left, and it was a make-up day, and therefore, she had no time to "improve" and avoid unsatisfactory clinical marks. The plaintiff, however, cites to no part of the record which establishes this as a fact.

5

"preliminary evaluation," and as to what the content of that document may have been. Logan identified two such documents, Logan Ex. 3, and Logan Ex. 4. The plaintiff described another document on which Logan had made large cross-out scribbles, but which was retained by Logan and which was never produced by the Defendants. [Rogers Dep. at 36-37]. Each of these documents contained different information as to the plaintiff's shortcomings in the clinical course. Further, the plaintiff argues that none of them contained information which corresponded to the findings in the final course evaluation, and none addressed the criteria set out in the Nursing Handbook.

Another part of the clinical process designed to provide a student notice and an opportunity to improve was preparation and grading of "care plans." A care plan was prepared by a student each day to outline her findings and nursing suggestions for each of her assigned patients. These plans were critiqued and marked by Logan, and then they were returned to the plaintiff with comments such as "very good," "check plus" and "check." None of the care plans advised the plaintiff of the possibility of an unsatisfactory clinical evaluation. [Logan Dep. at 71-81]. However, this was before Logan learned that the plaintiff had simply copied her care plans out of a book. [Logan Dep. at 77-78].

On December 10, 2003, Logan gave the final course evaluation to the plaintiff. [Logan Dep., Ex. 5]. Logan gave the plaintiff less than satisfactory marks in thirteen categories, causing her to miss the seventy-five percent requirement by six and one-half marks. In explaining her markings, Logan provided two different explanatory attachments, one typewritten and the other handwritten. Neither of these attachments, however, addressed the criteria set forth in the Nursing Handbook as being the basis of the grading. In deposition, Logan could not provide any specific examples of the plaintiff's work that had led her to the unsatisfactory grading. [Logan Dep., Ex. 6

and Ex. 7; Logan Dep. at 47, 64-65]. Even though the plaintiff was enrolled in the basic clinical course, Nursing 2511, Logan mistakenly used the evaluation tool for the advanced nursing course, Nursing 2521, to evaluate the plaintiff and several other students. However, the correct tool out of the Student Handbook was used as a guide, so the diagram was the same. Logan later transferred the evaluation onto the correct form. [Logan Dep. at 12, 23, 27]. Even though the plaintiff's fellow nursing students made mistakes in the clinical rotation, none had an unsatisfactory mark, and none were given failing grades. [Logan Dep. at 67-71][3].

The plaintiff appealed her failing grade in accordance with the procedures set out in the Nursing Handbook. [Nursing Handbook, pg. 19, "E Grade Appeal Procedure"]. The parties agree that all of the procedural requirements for the appeal were fulfilled, but the parties dispute whether those persons hearing the appeal discharged their duties to fully and fairly consider the merits of the case.

According to the written procedure, the appeal process includes the following steps which must be initiated by the student:

1. Contact the instructor to ensure that no calculation or administrative error has occurred.

2. If the student believes an appeal is warranted after consulting with the instructor and the Director of Nursing, he/she must submit an appeal in writing to the Dean of Health Programs. If the appeal cannot be satisfactorily addressed at this level, the student may forward the written appeal to the vice president for Academic Affairs. The academic vice president will review the appeal and notify the student of the decision regarding the appeal. The student, if not agreeing with the vice president's decision, may request a hearing before the

---

[3]At the November 21, 2006 hearing, the plaintiff stated that she was not alleging in this case that Logan was not qualified to evaluate her.

7

> College's Academic Affairs Committee. The Academic
> Affairs Committee will recommend to the vice president for
> Academic Affairs a decision regarding the appeal. The vice
> president for Academic Affairs will support or reverse the
> committee's recommendation and forward his
> recommendation to the president. The president's decision
> will be final.

[Rucker Aff., ¶ 12].

As demonstrated by the following, the plaintiff carried her appeal through all levels of the appeal process. Her appeal was denied at every stage.

On January 5, 2004, plaintiff wrote a letter to McCall, the Director of Nursing, initiating her appeal of the grade of "F" for the 2511 course for the Fall 2003 semester. In her appeal letter, plaintiff explained the basis for her appeal, and she attached several documents in support of her appeal, including statements from her preceptors and classmates. [Rogers Dep., Ex. 4].

On January 14, 2004, McCall, along with Barbara McNeely and Logan, met with the plaintiff regarding her appeal. Prior to the meeting, McCall reviewed all of the materials submitted by Rogers in support of the appeal, and McCall discussed those materials with other faculty members. [McCall Dep. at 23-24]. According to the plaintiff, she was not afforded the opportunity to question Logan about the evaluation, and Logan did not explain her reasoning. [Rogers Dep. at 33-35]. McCall then explained the percentage of unsatisfactory items on plaintiff's evaluation and advised that based on plaintiff's failure to acquire 75% satisfactory marks that she would uphold the grade. [McCall Aff. ¶ 15]. McCall then advised the plaintiff that her next step in the appeal process would be to appeal to Dean Marty Rucker ("Rucker") [Id.].

Plaintiff then delivered a letter to Rucker requesting a continuation of her appeal, and Rucker agreed to meet with plaintiff that day. [Rucker Aff. ¶ 13; Rogers Dep. at 31, Exhibits 5 and

8

6]. During their meeting, the plaintiff stated that she did not have the opportunity to review her clinical evaluation to her satisfaction with Logan. [Rucker Aff. ¶ 13, Rogers Dep. at 32]. At that point, the plaintiff was referred back to McCall to arrange another meeting with Logan. [Rucker Aff. ¶ 13].

On January 21, 2004, the plaintiff met with Logan, McCall, and McNeely to review her clinical evaluation a second time. Logan's clinical evaluation of the plaintiff was reviewed, and the plaintiff's appeal was denied. [McCall Aff. ¶ 16]. Plaintiff was then referred to Rucker for continuation of her appeal. [McCall Aff. ¶ 16].

On January 21, 2004, plaintiff and her daughter met with Rucker and McNeely to appeal her grade in the Nursing 2511 course. [Rucker Aff. ¶ 14; Rogers Dep. at 34-35]. Rucker reviewed, and accepted as "accurate," the grade tool that Logan had used to evaluate the plaintiff. [Rucker Dep. at 14]. Rucker did not make an independent investigation of whether Logan's grade markings were accurate, and she conceded that there is no standard of decision for her to use in determining a student's appeal of a grade. [Rucker Dep. at 12-13]. Rucker upheld the failing grade. Rucker then advised plaintiff that her next step in the appeal process was to appeal to Dr. Mary Lou Apple ("Apple"), Vice President Of Academic Affairs. [Rucker Aff. ¶ 15].

On January 26, 2004, plaintiff wrote to Apple advising her that she was continuing her appeal. [Rogers Dep. at 43, Ex. 7]. Plaintiff's letter detailed the basis of her appeal. [Rogers Dep. at 42]. On January 28, 2004, and February 4, 2004, plaintiff faxed two separate packets of supporting documents to Dr. Apple. [Rogers Dep. at 43-44, Exhibits 8-9].

On February 5, 2004, Apple wrote to plaintiff to advise her that after carefully considering all of the information, the appeal was denied. [Rogers Dep. at 44-45, Ex. 10]. In her

9

deposition, Apple testified that she was not aware of any "appeal standards" for determining whether an appeal should be granted and specifically, that the Nursing Handbook does not contain a written standard for deciding an appeal. [Apple Dep. at 7-8].

Apple advised plaintiff that if she elected to do so, she could appeal to the Academic Affairs Committee. [Rogers Dep. at 44-45, Ex. 10]. On March 11, 2004, the Academic Affairs Committee met to consider plaintiff's appeal of her grade in the Nursing 2511 course. Plaintiff personally presented her appeal to the committee, and she supplied to that committee all of the documents which she chose to submit. The plaintiff also spoke to that committee, although Apple did tell her that her time was limited. [Rogers Dep. at 48-49]. Some of the committee members questioned both plaintiff and Logan. After deliberating for about 15 minutes, the committee voted unanimously to deny the appeal. The plaintiff was told immediately of the decision. [Rogers Dep. at 50-51, 63].

On March 26, 2004, Dr. Jack Campbell ("Campbell") President of Walters State Community College, met with plaintiff and her two daughters. Prior to the meeting, the plaintiff sent documents to him. At the meeting, Campbell had with him all of the documents which the plaintiff had sent. At that meeting, before the plaintiff said anything, Campbell said that he had made his decision before plaintiff's arrival, and that he was not going to disturb the decision of the Academic Affairs Committee. [Rogers Dep. at 53-54].

This was the plaintiff's second dismissal from the WSCC Nursing Program. During the November 21, 2006 hearing, the parties stipulated that the plaintiff did not have the right, after the dismissal in issue, to re-apply for admission to the program. Although the plaintiff did re-apply for, and was granted, re-admission following her prior dismissal from the program, the Nursing

10

Handbook allows for only one such re-application [Nursing Handbook, Section E, ¶ 3].

### III. The Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing that there is no genuine issue of material fact lies upon the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In considering a motion for summary judgment, the Court must take all of the evidence submitted by the non-moving party as true, and must draw all reasonable inference in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. Id. at 248. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

Once the moving party presents evidence sufficient to carry its burden under Rule 56, the non-moving party may not rest upon its pleadings, but must affirmatively set forth, by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). An entry of summary judgment is mandated if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the evidence, the Court must determine "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52; see also Gaines v. Runyon, 107 F.3d 1171, 1174-75 (6th Cir. 1997) (requiring non-moving party "to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial" in order to defeat summary judgment).

## IV. Analysis and Ruling

### A. Whether plaintiff's nursing school education is a constitutionally protected property right

The Court will first address the plaintiff's claims, brought pursuant to 42 U.S.C. § 1983, that the defendants violated her constitutionally protected right to a nursing school education. The defendants argue that the plaintiff had no constitutionally cognizable right, or interest, to be a student, and therefore, the threshold requirement for plaintiff's claim can not be met. The plaintiff argues that the Tennessee Constitution and the Tennessee statutes creating a state university and community college system do create a property right in higher education in Tennessee. Plaintiff also asserts that case law recognizes the property right to have the terms and conditions of the WSCC Nursing Handbook fairly and properly applied to her grade, and to the appeal and review of her grade. In summary, the plaintiff claims the constitutional right to not be subjected to an unfair and irrational grading decision, as well as an appeal process which she alleges was superficial, lacked a standard of review, and simply "rubber stamped" the grade decision made by her instructor, Logan.

The plaintiff's prima facie case under 42 U.S.C. § 1983 requires a showing that: (1) plaintiff possessed a right; (2) she was deprived of that right; and (3) the deprivation was caused

under color of state law. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155-56 (1978).

In analyzing procedural due process cases, the Court must first determine whether the interest at stake is within the Fourteenth Amendment's protection of liberty and property. If the Court concludes that there is a protectable property right claimed, the Court will then address the form and nature of the process that is due. Accordingly, in a § 1983 due process claim for deprivation of a property interest, a plaintiff must first show a protected property interest. A review of the briefs filed by the parties shows that they agree on this threshold requirement. They disagree, however, as to whether it has been met by the plaintiff. Property interests "are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). A property right must come from a source independent of the Due Process Clause and be recognized by state law in order to be protected by the Due Process Clause. Woolsey v. Hunt, 932 F.2d 555, 564 (6th Cir. 1991). "Until the state bestows the right or benefit, there is no property right, and nothing for the procedural protections afforded by the Due Process clause to protect." Christophel v. Kukulinsky, 61 F.3d 479, 486 (6th Cir. 1995).

In the present case, the plaintiff can not establish that being a nursing student at WSCC was a property interest created by state law. See Board of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78 (1978). The undersigned agrees with the defendants that no Tennessee statute or regulation gives Rogers such a property right.

The United States Supreme Court has held that "the right to an education is not a fundamental right protected by the Constitution." See San Antonio Indep. Sch. Dist. v. Rodriguez,

411 U.S. 1, 33-35 (1973). In the context of medical school students, the Sixth Circuit, in two cases claiming a violation of procedural due process, simply "assumed without deciding" that the plaintiffs had constitutionally protected property interests in continuing their medical studies. See Stevens v. Hunt, 646 F.2d 1168, 1170 (6th Cir. 1981) and Ku v. State of Tennessee, 322 F.3d 431, 435 (6th Cir. 2003). The Stevens and Ku Courts then proceeded to address the adequacy of the procedures used by the schools. Therefore, the applicable Sixth Circuit case law simply has not addressed directly whether the plaintiff has asserted a constitutionally cognizable property right. This Court finds that she can not assert such a property right, and as a result, she can not establish a claim for violation of due process. As such, defendants are entitled to a summary judgment of dismissal.

B. **Procedural Due Process**

Should the District Judge disagree with the recommendation that plaintiff did not have a property interest in continuing her studies as a nursing student at WSCC, this Court will evaluate whether the plaintiff can establish that the defendants denied her procedural due process in reviewing her grade appeal. The defendants argue that the plaintiff received at least as much due process as the Fourteenth Amendment requires. The plaintiff argues that the appeal process lacked an established standard of review, and that those who conducted the appeal performed no independent evaluation of plaintiff's failing grade and simply "rubber stamped" the Logan grading decision.

The Sixth Circuit has plainly stated that in the case of an academic dismissal from a state educational institution, "when the student has been fully informed of the faculty's dissatisfaction with the student's academic progress and when the decision to dismiss was careful

14

and deliberate, the Fourteenth Amendment's procedural due process requirement has been met." Ku, 322 F.3d at 436 (citing Board of Curators of the Univ. of Mo. v. Horowitz, 435 U.S. 78, 85-86 (1978). No formal hearing is required for academic decisions because such academic decisions "require an expert evaluation of cumulative information and [are] not readily adapted to the procedural tools of judicial or administrative decision making." Horowitz, 435 U.S. at 91.

In this case, WSCC provided a procedural process whereby the plaintiff did appeal Logan's decision to give her a failing grade to the highest authorities at the college. The evidence establishes that the plaintiff followed the established appeal procedure; that she presented, at each level of appeal, all of the written documents that she wished to rely on in support of her appeal; and that she personally met with the appropriate representatives of WSCC at each level of appeal.

The defendants argue that other than her unsupported allegations, plaintiff has no evidence that would tend to establish that the defendants failed to carefully and deliberately consider her grade appeal. The plaintiff concedes that "school officials are given the widest possible latitude to determine academic matters in their institutions based upon their expertise and professional judgment." [Doc. 38]. The plaintiff also concedes that there were no established constitutional due process standards for WSCC to follow relative to her appeal. The plaintiff, however, argues that the appeal process was superficial and did not carefully and conscientiously consider the merits of the appeal. After carefully reviewing the entire record in this case, including the deposition testimony on file by Rogers, Logan, McCall, Rucker, Apple and Campbell, and the exhibits, the Court must conclude that the entire appeal process was handled "carefully, deliberately and reasonably," as the Ku Court stated. Therefore, even if the plaintiff did have a constitutionally protected property interest in her nursing studies, the appeal procedure used by WSCC was sufficient under the Due

Process Clause of the Fourteenth Amendment as a matter of law.

### C.  Substantive Due Process

The defendants correctly argue that the interests protected by the substantive due process clause are much narrower than those protected by procedural due process. Bell v. Ohio State, 351 F.3d 240 (6th Cir. 2003). Moreover, there is no case law precedent for the proposition that a college student has a substantive due process right to continue her studies. To the contrary, case law has noted that "concerns of federalism, judicial capacity, and academic freedom counsel against the recognition of such an interest." Id. (citing Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 222 (1985)). University faculties are given the widest range of discretion "in making judgments as to the academic performance of students and their entitlement to promotion or graduation." Horowitz, 435 U.S. at 96 n.6. The courts "are particularly ill-equipped to evaluate academic performance." Id. at 92.

Undisputed facts in the record support the conclusion that plaintiff received a failing grade in her clinical course because of her inability to exhibit the behaviors required to achieve a satisfactory evaluation in one of her nursing courses. The written evaluations prepared by Logan, for example, provide a rational basis for the failing grade. It would be unreasonable to find that WSCC's decision to uphold the plaintiff's failing grade lacked a rational basis or was the result of improper motives by WSCC. Moreover, review by the courts of academic decisions is constrained:

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

Ewing, 474 U.S. at 255.

Based on the foregoing, defendants are entitled to a summary judgment of dismissal on the ground that plaintiff can not establish either that she had an interest protected by substantive due process or that defendants' actions constituted a denial of substantive due process.

### D. Defamation Claim

The defendants assert [Doc. 41] that the plaintiff's defamation claim has previously been dismissed and that any possible attempt by the plaintiff to make such a claim (see plaintiff's brief [Doc. 38 at pages 9-10]), must be dismissed. The Court notes that on April 18, 2005, defendants filed a Motion To Dismiss Plaintiff's 42 U.S.C. §1983 claim for money damages and her common law defamation claim. [Doc. 5]. In an Order that was entered on August 18, 2005, the District Court granted Defendant's Motion and ordered that all monetary claims against the Tennessee Board of Regents ("TBR"), and the members thereof named in their official capacities, Walters State Community College ("WSCC"), and the Walters State Community College employees named in their official capacities, be dismissed. [Doc. 17]. Accordingly, to the extent that the plaintiff may be attempting to base a claim for injunctive relief on an allegation of defamation, it must be dismissed.

## V. Conclusion

For the foregoing reasons and based upon the entire record in this case, it is **RECOMMENDED** that the defendant's Motion for Summary Judgment [Doc. 31] be **GRANTED**.[4]

Respectfully submitted,

    s/ H. Bruce Guyton
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).